# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

MARY AGNES LUCERO

       Plaintiff,

v.                                    Case. No.14-cv-00999

UNITED STATES DEPARTMENT OF
LABOR, Energy Employees Occupational
Illness Compensation Program, Office of
Workers Compensation

       Defendant.

---

*Appearances:*

*For Plaintiff Mary Agnes Lucero:*
ANTHONY KEVIN MARTINEZ
219 9th St., NW
Albuquerque, NM  87102

*For Defendant United States Department of Labor:*
DAMON P. MARTINEZ
United States Attorney
201 3rd Street NW
Suite 900
Albuquerque, NM  87114

*By*: ROBERTO D. ORTEGA
Assistant United States Attorney
P.O. Box 607
Albuquerque, NM 87103

NICHOLAS D. BEADLE
U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Suite S-4325
Washington, D.C. 20210

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Mary Agnes Lucero's Petition for Review of Final Decision and Memorandum in Support Thereof [Docs. 1, 23]. Defendant United States Department of Labor opposed Ms. Lucero's petition on August 24, 2015 [Doc. 25].  Ms. Lucero replied in support of her petition on September 14, 2015 [Doc. 26].

The Court, having considered the motions, briefs and relevant law, and being otherwise fully informed, finds that Ms. Lucero's Petition will be **GRANTED**.

### BACKGROUND

This case involves a relatively straightforward issue of statutory interpretation set against the backdrop of a complicated federal regulatory scheme and a highly unusual fact pattern.  In essence, the federal government has created a compensation system for the domestic victims of the United States nuclear weapons program who have suffered severe health problems as a consequence of their exposure to nuclear materials.  Mr. Lucero (deceased) was the Plaintiff's husband, and both parties admit that Mr. Lucero was entitled to a particular $42,500 in compensation for injuries suffered as a uranium miner working for the United States. Unfortunately, Mr. Lucero died on the same day his compensation claim was granted.  Ms. Lucero claims that, as Mr. Lucero's surviving spouse, she is entitled to the same $42,500.  The Department of Labor, relying on its own interpretations of the relevant statutes, disagrees.

### I.      Statutory and Regulatory Background

In the mid-20th century, the United Sates employed uranium miners to collect raw materials used to construct nuclear weapons and conducted substantial nuclear testing in the American West.  42 U.S.C. § 2210 note (2012); UNITED STATES DEPARTMENT OF JUSTICE, RADIATION EXPOSURE COMPENSATION ACT, https://www.justice.gov/civil/common/reca (last

accessed July 27, 2016).  In 1990, Congress passed the Ration Exposure Compensation Act ("RECA"), which, in combination with the Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA"), established a compensation fund and provides compensation for some of the collateral victims of the United States' nuclear weapons program, including uranium miners.  *Id.*  When enacting RECA, Congress noted that:

> (3) radiation released in underground uranium mines that were providing uranium for the primary use and benefit of the nuclear weapons program of the United States Government exposed miners to large doses of radiation and other airborne hazards in the mine environment that together are presumed to have produced an increased incidence of lung cancer and respiratory diseases among these miners;

> (4) the United States should recognize and assume responsibility for the harm done to these individuals; and

> (5) the Congress recognizes that the lives and health of uranium miners and of individuals who were exposed to radiation were subjected to increased risk of injury and disease to serve the national security interests of the United States.

> (b) PURPOSE. — It is the purpose of this Act to establish a procedure to make partial restitution to the individuals described in subsection (a) for the burdens they have borne for the Nation as a whole.

> (c) APOLOGY. — The Congress apologizes on behalf of the Nation to the [collateral domestic victims of the United States nuclear weapons program] and their families for the hardships they have endured.

Radiation Exposure Compensation Act of 1990, Pub. L. 101-426, 104 Stat. 920, *as amended by* Pub. L. 101-510, Nov. 5, 1990 (1990) (codified at 42 U.S.C. § 2210 note).

In conjunction with the compensation fund established by RECA, EEOICPA is a federal compensation statute providing benefits to employees or agents of the Department of Energy with illnesses caused by exposure to radiation and other toxic substances.  Congress enacted EEOICPA in order to "provide for timely, uniform, and adequate compensation of covered employees and, where applicable, survivors of such employees, suffering from illnesses incurred

by such employees in the performance of duty for the Department of Energy and certain of its contractors and subcontractors."  42 U.S.C. §7384d(b).

Under Part B of EEOICPA, employees and agents are awarded lump-sum payments of either $50,000 or $150,000 as compensation for designated occupational illnesses resulting from their exposure to certain hazardous materials, including uranium, in the performance of their duties.  42 U.S.C. §§ 7384l–7384w-1. Under Section 7384u(a) of EEOICPA, the Department of Labor awards lump-sum payments of $50,000 to individuals who previously have received an award of $100,000 from the Department of Justice under section 5 of the Radiation Exposure Compensation Act (RECA) to supplement the compensation the collateral victims of the United States nuclear weapons program had already received.  42 U.S.C. § 7384u(a).

Part E of EEOICPA provides additional, variable lump-sum payments to Department of Energy contractors based on a worker's percentage of permanent impairment and qualifying calendar years of established wage-loss and medical benefits; Part E further provides variable lump-sum payments to survivors of such employees who sustain illnesses due to their work-related exposure to toxic substances.  42 U.S.C. §§ 7385s–7385s-16.  Part E extends these benefits to uranium miners and, in case of a uranium miner's death, to their survivors.  42 U.S.C. § 7385s-5.  Furthermore, Section 7385s-4(a) provides that a determination under Part B that an employee is entitled to Part B benefits is presumed to be a determination under Part E that the employee contracted a covered illness due to work-related exposure to a toxic substance at a covered facility.  42 U.S.C. § 7385s-4(a).

Mr. and Ms. Lucero's Part E impairment claim under EEOICPA is the subject of this appeal.

4

Part E impairment claims are determined by the Department of Labor based on a determination of an employee's "impairment percentage" based on a $250,000 maximum.  *See* 42 U.S.C. § 7385s-12.  This is essentially a determination of how much impairment an employee has suffered due to their exposure to radiation as a uranium miner.  *See* 42 U.S.C. § 7385s-12.  For each impairment percentage point an employee suffers, the Department of Labor pays $2,500.00.  Thus, the formula for determining compensation is: (%Percentage Impairment) x $2,500.00 = Compensation.  Doc. 23, Brief ISO Pet., at 3–4.

After an initial compensation amount is set, a uranium miner can file an additional impairment claim every two years based on either "an increase in impairment rating" or "illness [resulting] from the impairment rating that formed the basis for the last award[.]"   DoE Employees' Benefits Rule, 20 C.F.R. § 30.912 (2006).

The question of statutory interpretation at issue in this lawsuit is whether the EEOICPA (or subsequent Department of Labor regulation) lawfully precludes a surviving spouse from claiming her spouse's <u>additional</u> benefits under the Part E when her spouse has already received <u>some</u> benefits under Part E.

**A.  The Statutory Provisions and Agency Interpretations at Issue**

After the death of a collateral victim contracted by the United States for its nuclear weapons program (such as a uranium miner), monetary benefits from the United States cannot be paid directly to that victim's estate under Section 7385s-2 or Section 7385s-1(1).  42 U.S.C. § 7385s-1(2).  Instead, the survivor of the deceased must file her own claim under a different section of EEOICPA, 42 U.S.C. § 7385s-1(2).  That Section states:

(1) CONTRACTOR EMPLOYEES - A covered DOE contractor employee shall receive contractor employee compensation under this part in accordance with section 7385s-2.[1]

(2) SURVIVORS - <u>After the death of a covered DOE contractor employee</u>, compensation referred to in paragraph (1) shall not be paid.  Instead, <u>the survivor of that employee shall receive compensation as follows</u>:

(A) Except as provided in subparagraph (B), the survivor of that employee shall receive contractor employee compensation under this part in accordance with section 7385s-3.[2]

(B) In a case in which the employee's death occurred after the employee applied under this part and <u>before compensation was paid under paragraph (1)</u>, and the employee's death occurred from a cause other than the covered illness of the employee, <u>the survivor of that employee may elect to receive</u>, in lieu of compensation under subparagraph (A), <u>the amount of contractor employee compensation that the employee would have received in accordance with section 7385s-2 if the employee's death had not occurred before compensation was paid under paragraph (1)</u>.

42 U.S.C. § 7385s-1(emphasis added).[3]  The meaning of the highlighted language is the matter at issue in this case.  It has been interpreted by Department of Labor regulations as follows:

(a) <u>If a covered Part E employee dies after filing a claim but before monetary benefits are paid</u> under Part E of the Act, and his or her death is from a cause other than a covered illness, <u>his or her survivor can choose to receive</u> either the survivor benefits payable on account of the death of that covered Part E employee, or <u>the monetary benefits that would otherwise have been payable to the covered Part E employee</u>.

(b) For the purposes of this section only, a death "from a cause other than a covered illness" refers only to a death that was solely caused by a noncovered illness or illnesses. Therefore, the choice referred to in paragraph (a) of this section will not be available if a covered illness contributed to the death of the covered Part E employee in any manner.  In those instances, survivor benefits

---

[1] 42 U.S.C. §7385s-2 pertains to impairment benefits at a rate of $2,500 per impairment percentage point.

[2] 42 U. S. C. §7385s-3 pertains to widows benefits in the amount of $125,000.00 when the covered conditions caused, aggravated and/or contributed to the worker's death.

[3] However, in a case where the covered illness aggravated, contributed to, or caused a covered Part E employee's death, the survivor does not have the option to elect to receive the benefits that would have otherwise been payable to the covered Part E employee if he or she was living at the time of payment, and may instead claim for benefits under the compensation schedule for survivors set out in 42 U.S.C. § 7385s-3.

> will still be payable to the claimant, but he or she cannot choose to receive the
> monetary benefits that would have otherwise been payable to the deceased
> covered Part E employee in lieu of survivor benefits.

20 C.F.R. § 30.509(a)–(b).  The preamble to the interim final rule that first contained 20 C.F.R.

Section 30.509 describes the Department of Labor regulation as follows:

> Newly added § 30.509 describes the option that certain claimants under Part E
> have to choose between receiving the benefits payable to them as a survivor, and
> the benefits that would have been payable to the deceased covered Part E
> employee if he or she were still living at the time of payment. This option is
> contained in 42 U.S.C. 7385s-1(2)(B), and new § 30.509 notes that claimants will
> only have the opportunity to make this choice in certain limited circumstances.
> First, a survivor of a covered Part E employee may choose to exercise this option
> only if the employee died after filing his or her Part E claim (or a claim under
> former Part D), <u>but prior to receiving any compensation under the Act</u>. In
> addition, the covered Part E employee's death must have been solely caused by a
> non-covered illness or illnesses for this option to be available to the survivor. If
> both of these requirements are met, it is likely that a survivor would choose to
> receive the benefits that the deceased covered Part E employee would have
> received since, in that situation, no survivor benefits would be payable for the
> death.

70 Fed. Reg. 33590, at 33595 (June 8, 2005) (emphasis added).   The Department of Labor

interpretation of this provision of EEOICPA is further clarified in Chapter 2-1200.12b of an

internal Department of Labor claims procedure manual, which states:

> b. <u>Death Due to Non-Covered Illness, Part E</u>. If a covered Part E employee dies
> after filing a claim but before any payment is received, and if the employee's
> death was caused solely by a non-covered illness, the survivor (any survivor
> including the spouse) has the election of benefits option. The survivor may elect
> to receive compensation that the employee would have received had he not died
> prior to payment. It is not necessary for the employee to have filed a claim
> specifically for wage-loss or impairment in order to have the election of benefit
> option available. As long as the employee filed a Part E claim, claims for
> impairment and wage-loss are assumed. However, if the employee received any
> compensation for impairment or wage-loss, prior to his death, such payment voids
> the election of benefit option.

UNITED STATES DEPARTMENT OF LABOR, FEDERAL (EEOICPA) PROCEDURE MANUAL, Chapter

2-1200.12b         (August         2010),         *available         at*

7

http://www.dol.gov/owcp/energy/regs/compliance/PolicyandProcedures/

proceduremanualhtml/unifiedpm/Unifiedpm_part2/ Chapter2-1200EstablishingSurvivorship.htm

(last visited on July 27, 2016).

### B.  The Department of Labor's Adjudication Process

An individual asserts entitlement to benefits under EEOICPA by filing a claim with the

Department of Labor's Office of Workers' Compensation Programs (OWCP).  DoE Employees'

Benefits Rule, 20 C.F.R. §§ 30.100–02 (2006); *see* Exec. Order No. 13179, 65 Fed. Reg. 77487

(Dec. 11, 2000).  Pursuant to the presumption noted above, a RECA Section 5 awardee whose

Part B claim has been accepted by OWCP is also entitled to medical benefits under Part E for

those same illnesses.  42 U.S.C. § 7385s-4(a).

After completing the necessary development of a claim, an OWCP district office will

issue a recommended decision informing the claimant of its recommended findings of fact and

conclusions of law. 20 C.F.R. §§ 30.300, 30.305–07 (2006). After a recommended decision is

issued, the claimant has 60 days to file written objections to it with the Final Adjudication

Branch (FAB) within OWCP.  20 C.F.R. § 30.310 (2006).  The FAB considers objections filed

by the claimant and will conduct an informal oral hearing, if requested by the claimant, before

issuing the final agency decision on the claim. 20 C.F.R. §§ 30.300, 30.314, 30.316 (2006).  A

claimant dissatisfied with the final decision issued by FAB may request reconsideration within

30 days of the issuance of the decision.  20 C.F.R. § 30.319(a).  If the request for reconsideration

is denied, the FAB decision that formed the basis for the request will be considered "final" on the

date the request is denied.  20 C.F.R. § 30.319(c)(2).

### II.    The Luceros' Administrative Claims Before the Department of Labor

### A.  Mr. Lucero's Claims

On December 1, 2006, Mr. Lucero, a former uranium miner and collateral victim of the United States nuclear weapons program, filed a claim under Parts B and E of EEOICPA with OWCP asserting that he had contracted diabetes, high blood pressure, and lung disease as a result of his work at a uranium mine designed to produce material for the construction of nuclear weapons. Doc. 12, Administrative Record, at 445–55 (hereinafter "AR"). He also explained that he was in the process of applying for an award under Section 5 of RECA. AR at 454. On March 26, 2008, OWCP's district office obtained written verification from the Department of Justice that Mr. Lucero had received the $100,000 payment available under Section 5 of RECA for pneumoconiosis, silicosis, pulmonary fibrosis and fibrosis of the lung. AR at 409. On April 28, 2008, Mr. Lucero filed a new claim for benefits under Parts B and E of EEOICPA for those four lung conditions based on the automatic triggering provisions of EEOICPA described above. AR at 408. The district office then issued a recommended decision on May 6, 2008 to accept Mr. Lucero's claim under Parts B and E for his lung conditions based on the RECA award from the Department of Justice and to deny his Part E claim for diabetes and high blood pressure. AR at 397–99. Mr. Lucero did not object to this recommendation, after which the FAB issued a June 26, 2008 final decision that awarded Mr. Lucero the $50,000 supplemental payment under Part B and medical benefits under Parts B and E for his injuries. AR at 383–85.

On August 11, 2008, Mr. Lucero filed his first claim for impairment benefits under Part E. AR at 371. Following development of the medical evidence and the district office's issuance of a recommended decision, FAB issued a final decision on May 8, 2009 awarding Mr. Lucero $7,500 in impairment benefits for his 3% impairment due to his illnesses resulting from the uranium (3% x $2,500 = $7,500). AR at 319–20, 308–10. Two years later, Mr. Lucero filed a claim for an additional 17% impairment due to illnesses resulting from the uranium (20% total

impairment).  AR at 295.   After developing this second claim, the district office issued a November 21, 2011 recommended decision to award Mr. Lucero $42,500 in impairment benefits for his additional 17% whole-person impairment (17% x $2,500 = $42,500).  AR at 215–17.

Unfortunately, on that same date and before the FAB issued a final decision, Mr. Lucero died as a result of atherosclerotic and hypertensive cardiovascular disease, with diabetes mellitus as another significant condition contributing to his death.  AR at 204–06.  Consequently, FAB did not issue Mr. Lucero the $42,500 and instead issued a remand order on February 3, 2012, returning Mr. Lucero's Part E claim to the district office for administrative closure.  AR at 202–03.

**B.  Ms. Lucero's Claims**

Ms. Lucero, the plaintiff in this case, is Mr. Lucero's widow.   Doc. 23, Brief ISO Petition, at 1.  On October 23, 2012, Ms. Lucero filed a claim for Mr. Lucero's unpaid benefits under Part E as the surviving spouse of Mr. Lucero.  AR at 196–97.  On February 8, 2013, the district office issued a recommended decision to accept Ms. Lucero's claim and to award her the $42,500 in unpaid impairment benefits for Mr. Lucero's 17% increased impairment.  AR  at 166–68.   On April 5, 2013, the FAB issued a final decision adopting the February 8, 2013 recommendation.  AR at 154–57.

However, before payment was issued to Ms. Lucero, the Director of OWCP's Division of Energy Employees Occupational Illness Compensation, Rachel P. Leiton, issued an order on July 11, 2013 vacating the FAB's April 5, 2013 final decision.  AR at 128–30.[4]  Ms. Leiton reasoned

---

[4] In its regulations, DOL reserves the right to reopen FAB claims on the motion of the director "[a]t any time after the FAB has issued a final decision . . . and without regard to whether new evidence or information is presented or obtained[.]" 20 C.F.R. § 30.320(a). The director may "return [the claim] to the FAB for issuance of a new final decision, or to the district office for such further development as may be necessary, to be followed by a new recommended decision." *Id.*

that since Mr. Lucero had received a Part E award of $7,500 in impairment benefits before he died, Ms. Lucero was not entitled to claim any additional Part E award on behalf of Mr. Lucero after Mr. Lucero's death based on a new finding that Mr. Lucero suffered 20%, and not 3%, impairment.  *Id.*  Ms. Leiton based her decision on Chapter 2-1200.12b of the Department of Labor's internal EEOICPA Procedure Manual rather than on the text of the EEOICPA or the published federal regulations interpreting EEOICPA.  AR at 129–130.  Ms. Leiton returned the case file to the district office for issuance of a new recommended decision consistent with her order.  *Id.*

Following return of the case file, the district office issued a December 27, 2013 recommended decision to deny Ms. Lucero's Part E claim for her husband's unpaid impairment benefits.  AR at 112–14.  Ms. Lucero subsequently objected to that recommended denial and alleged: (1) that as a surviving spouse she was entitled to receive Mr. Lucero's benefits under both Section 7385s-1(2)(B) of the EEOICPA and Section 30.509(a) of the Department of Labor regulations; and (2) that Chapter 2-1200.12b of the Procedure Manual is an improper interpretation of the EEOICPA.  AR at 74–82, 45–54.

On June 5, 2014, FAB issued a final decision denying Lucero's claim.  AR at 38–43.  Contrary to Ms. Leiton's reliance on an internal Department of Labor claims manual, the FAB determined that the statutory provision at issue, Section 7385s-1(2), had been interpreted by published Department of Labor regulations at 20 C.F.R. Section 30.509(a) to preclude Ms. Lucero's claim.  AR at 40–42.  In reaching this conclusion, the FAB relied on language in the preamble of the interim final rule that first contained Section 30.509(a), which stated that a survivor of a covered Part E employee may choose to exercise the option in Section 7385s-1(2) (B) "only if the employee died after filing his or her Part E claim . . .but prior to receiving <u>any</u>

compensation under the Act[.]"  AR at 42 (emphasis added) (citing 70 Fed. Reg. 33590, at 33595 (June 8, 2005)).

On July 3, 2014, Ms. Lucero requested reconsideration of the June 5, 2014 final decision. AR at 7–18.  However, on September 5, 2014, FAB issued an order denying her reconsideration request.  AR at 4.

### III.   Procedural Posture

Ms. Lucero filed her complaint in this action on November 4, 2014, alleging that the actions of the Department of Labor were arbitrary and capricious.  Doc. 1, Petition.  The Department of Labor filed its answer to the complaint on March 9, 2015.  Doc. 6, Answer.  On April 16, 2015, the Department of Labor lodged with the Court a certified copy of the Administrative Record for Ms. Lucero's EEOICPA claim.  Doc. 12., AR.  After a discovery dispute, *see generally* Docs. 13–21, Ms. Lucero filed her opening brief on July 23, 2015, alleging that the Department of Labor impermissibly denied her monetary compensation for her husband's radiation-induced injuries under both the plain meaning of the EEOICPA and the Department of Labor's published regulations interpreting that statute.  Doc. 23, Brief ISO Petition for Rev.  The Department of Labor opposed Ms. Lucero's petition on August 24, 2015, alleging that it followed its internal policy manual and it published regulations in denying MS. Lucero's claim.  Doc. 25, Opp. to Petition for Rev.  Ms. Lucero replied in support of her petition on September 14, 2015.  Doc. 26.  Reply ISO Pet. for Rev.

ANALYSIS

### I.   Standard of Review

When a plaintiff challenges an agency's administrative decision, the Court applies the standard of review set forth under the relevant statute or, if no standard is specified, the Court

applies the standard of review set forth in the Administrative Procedures Act. *Stephens v. U.S.*

*Dep't of Labor*, 571 F. Supp. 2d 186, 190 (D.D.C. 2008). Under the EEOICPA, Congress

granted federal courts the authority to review benefit determinations by the Department of Labor

if those decisions are "arbitrary and capricious." 42 U.S.C. § 7385s-6 (allowing a reviewing

court to "modify or set aside [a Department of Labor claim determination] only if the court

determines that such decision is arbitrary and capricious"); *cf.* 5 U.S.C. § 706(2)(A) (elaborating

the arbitrary or capricious standard under the Administrative Procedure Act). Because of the

strong similarities between the language Congress used to authorize judicial review of EEOICPA

determinations and the language of the Administrative Procedure Act, courts have reviewed Part

E final decisions as they would under the "arbitrary or capricious" standard in the Administrative

Procedure Act (APA). *E.g., Barrie v. U.S. Dep't of Labor*, 597 F.Supp.2d 1235, 1239 (D. Colo.

2009); *Stephens v. U.S Dep't of Labor*, 571 F. Supp. 2d 186, 190 (D.D.C. 2008); *see Stephens v.*

*Dep't of Labor*, 384 F. App'x 5, 5–6 (D.C. Cir. 2010) (applying APA case law to determine

whether the Department of Labor acted arbitrarily and capriciously under the EEOICPA).

Under the APA's "arbitrary or capricious" standard, a reviewing court must determine,

among other things, whether the agency:

> [1] has relied on factors which Congress has not intended it to consider, [2] entirely failed to consider an important aspect of the problem, [3] offered an explanation for its decision that runs counter to the evidence before the agency, or [4] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S.

29, 43 (1983). The Tenth Circuit has interpreted the APA's "arbitrary or capricious" standard,

following Supreme Court precedent, as requiring "the reviewing court [to] determine whether the

agency considered all relevant factors [in making a decision] and whether there has been a clear

error of judgment." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir. 1994).

In applying this standard, the Tenth Circuit affords the agency decision "a presumption of

validity." *Wyoming v. U.S. Dep't of Agriculture*, 661 F.3d 1209, 1227 (10th Cir. 2011) (quoting

*Copar Pumice Co. v. Tidwell*, 603 F.3d 780, 793 (10th Cir. 2010)).

When a final agency action is challenged, as is the case here, the Court's review is

generally limited to the administrative record and the grounds for decision invoked by the

agency.  *See Camp v. Pitts,* 411 U.S. 138, 142 (1973); *SEC v. Chenery Corp.,* 332 U.S. 194, 196,

67 (1947).  However, in the Tenth Circuit, the Court "may supplement the record or remand the

case to the agency for further proceedings."  *Olenhouse v. Commodity Credit Corp.*, 42 F.3d

1560, 1575 (10th Cir. 1994).

## II.  ***Chevron* Analysis**

The core of Ms. Lucero's challenge in this case is that the Department of Labor's

interpretation of the EEOICPA is arbitrary and capricious because it is precluded by the

unambiguous text of the statute itself.  Doc. 23, Brief ISO Petition, at 9–12.  When reviewing an

agency's construction of a statute it administers, the Court applies the "well-known, two-step

analysis articulated in *Chevron*[.]"  *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1147–48

(10th Cir. 2013) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837

(1984).  The Chevron inquiry involves two steps.  First, "[i]f the intent of Congress is clear, that

is the end of the matter; for the court, as well as the agency, must give effect to the

unambiguously expressed intent of Congress." *Chevron,* 467 U.S. 837 at 842–43.  If the statute is

silent or ambiguous on the issue, the Court proceeds to step two and ask "whether the agency's

answer is based on a permissible construction of the statute."  *Id.* at 843.  So long as the agency's

construction is not "arbitrary, capricious, or manifestly contrary to the statute," that construction

14

will stand.  *Id.* at 843–44.  Under the second step of the Chevron analysis, the Court considers whether its interpretation confers authority "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  *WildEarth Guardians v. United States Fish & Wildlife Serv.*, 784 F.3d 677, 683 (10th Cir. 2015) (citing 5 U.S.C. § 706(2)(C)); *see Copar Pumice Co. v. Tidwell,* 603 F.3d 780, 801 (10th Cir. 2010).

## A.  *Chevron* Step 1: The EEOICPA Is Unambiguous

The relevant portion of the EEOICPA is as follows:

> (1) CONTRACTOR EMPLOYEES - A covered DOE contractor employee shall receive contractor employee compensation under this part in accordance with section 7385s-2.[5]

> (2) SURVIVORS - After the death of a covered DOE contractor employee, compensation referred to in paragraph (1) shall not be paid.  Instead, the survivor of that employee shall receive compensation as follows:

> (B) In a case in which the employee's death occurred after the employee applied under this part and before compensation was paid under paragraph (1) . . . the survivor of that employee may elect to receive . . . the amount of contractor employee compensation that the employee would have received in accordance with section 7385s-2 if the employee's death had not occurred before compensation was paid under paragraph (1).

42 U.S.C. § 7385s-1 (emphasis added).  Relying on this language, the Department of Labor denied Ms. Lucero's claim for Mr. Lucero's 20% whole-body impairment by asserting that Mr. Lucero had previously been compensated for 3% whole-body impairment.  AR at 38–43.

The Department of Labor asserts that the phrase "before compensation was paid" is ambiguous because "it is unclear from [the statute] whether the survivor's election set out in § 7385s-1(2)(B) is only available if the covered employee died before receiving *any* compensation under [the statute], or only if the covered employee died before receiving *the most recent*

---

[5] 42 U.S.C. §7385s-2 pertains to impairment benefits at a rate of $2,500 per impairment percentage point.

requested installment of compensation."   Doc. 25, Opp. to Petition, at 15.   In short, the Department of Labor asserts that the phrase "before compensation was paid" should be read to read "before <u>any</u> compensation was paid."  Doc. 25, Opp. to Petition, at 15.  The Department of Labor furthers this claim by pointing out that ten sections further down in the statute, at Section 7385s-11, Congress explicitly made the distinction between monetary and medical compensation under the statute.   *Id.* (citing 42 U.S.C. § 7385s-11).   Since Congress acknowledged the distinction between various kinds of compensation under the statute, but did not clarify which kind of compensation applied under Section 7385s-1, the Department of Labor asserts that the broadest possible interpretation – "any compensation" – should apply.  *Id.*

The Department of Labor is right that Section 7385s-1should be read in context with the rest of the statute.  *See Barnhart v. Walton*, 535 U.S. 212, 218–19 (2002) (comparing nearby statutory provisions); NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 46:5 (7th ed. 2015) (explaining the "whole statute" rule). However, the statutory context of Section 7385s-1 does not support the Department of Labor's interpretation.  It is true that Section 7385s-11 does distinguish between medical compensation and monetary compensation.  42 U.S.C. Section 7385s-11.  However, the Department of Labor is not asserting that distinction between forms of relief (medical v. monetary) is relevant here. Instead, the distinction the Department of Labor is trying to draw is between the temporality of the compensation.  In Ms. Lucero's case both instances of compensation involved monetary, and not medical compensation.   In 2009 Mr. Lucero received $7,500 for a 3% whole-body impairment, whereas in 2011 Mr. Lucero was owed $42,500 for a 20% whole-body impairment. AR 215–17, 308–10, 319–20.  What is relevant for this case is whether the <u>earlier</u> monetary compensation automatically precludes the <u>later</u> monetary compensation under Section 7385s-

16

1(2).   The Department of Labor has pointed to no statutory provisions where an earlier compensation would preclude a later compensation and has provided no explanation for how such a statutory determination would help guide this Court in interpreting Section 7385s-1.

Contrary to the Department of Labor's interpretation, Ms. Lucero, argues that the word "compensation" should be read as "the compensation the worker would have received had he or she not died."  Doc. 26, Reply ISO Petition, at 3.   Thus, since Mr. Lucero was owed the $42,500 under Section 7835s-2, but died before he received the $42,500 under that section, Ms. Lucero should be able to recover under Section 7835s-1.  *Id.*  To bolster her interpretation, Ms. Lucero points out that further down in the statute Congress enacted a specific limitation on the compensation that the Department of Labor could pay under the EEOICPA statutory scheme.  *Id.* at 3 (citing 42 U.S.C. § 7385s-12).   Since Congress went through the effort of specifically limiting a claimant's recovery under Section 7385s-12, but did not specifically limit compensation under Section 7385s-1 in the manner the Department of Labor suggests, there is no reason to impose unspecified, additional limitations on the compensation recoverable.  *Id.; see* Hon. Frank E. Easterbrook, *Statutes' Domains*, 50 U. Chi. L. Rev 533, 536 (1983) (emphasizing that statutes should be construed to limit their applicability).

Ms. Lucero is right, but for the wrong reason.  While the other statutory provisions cited by the parties do shed some light on the meaning of "compensation" for the purpose of Section 7835s-1(2)(B), *see* SUTHERLAND at § 46:5, the Court need not decide between the conflicting implications of the use of "compensation" in the sections beyond EEOICPA Section 7835s-1 because Section 7835s-1 itself explains what it means by "compensation."  *Barnhart* 535 U.S. at 217 (the act of statutory interpretation ends "if the statute speaks clearly to the precise question at issue") (quotations omitted).   As provided in numerous places in this opinion, the statutory

provision states that the "compensation" referred to is the "compensation <u>that the employee</u> <u>would have received in accordance with section 7385s-2 if the employee's death had not</u> <u>occurred before compensation was paid</u> under paragraph (1)."   42 U.S.C. § 7835s-1(2)(B). Under English-language principles of grammar, a clause following a noun which begins with "that" is a "restrictive clause [that] is essential to the grammatical and logical completeness of a sentence."  BRYAN A. GARNER, GARNER'S MODERN ENGLISH USAGE 806–09 (Oxford University Press, 3d. ed. 2009); *see* SUTHERLAND at § 46:1 (explaining the "plain meaning" rule).  Here, it is clear that the word "compensation" means the compensation Mr. Lucero applied for under Section 7385s-2 of the statute, but died before he was able to receive.  This reading is mandated because that was precisely the compensation "<u>that</u> [Mr. Lucero] would have received in accordance with section 7384s-2 if the employee's death had not occurred before compensation was paid[.]"  42 U.S.C. §7385s-1; *see* AR 217 (finding that Mr. Lucero was entitled to the $42,500 in accordance with Section 7385s-2).  In short, the statute itself specifies precisely what it means by "compensation."  Thus no ambiguity exists, and Ms. Lucero's interpretation that "compensation" should be read as "the compensation the worker would have received [in accordance with Section 7385s-2] had he or she not died" is correct.  *See* Doc. 26, Reply ISO Petition, at 3.

 This interpretation is bolstered by the purpose of the EEOICPA.  As Congress explained, EEOICPA seeks to "provide for timely, uniform, and adequate compensation of covered employees and, where applicable, survivors of such employees, suffering from illnesses incurred by such employees in the performance of duty for the Department of Energy and certain of its contractors and subcontractors."  42 U.S.C. §7384d(b).  In short, the EEOICPA exists to <u>compensate</u> Department of Energy employees who suffer injuries as a result of their

employment. *Id.* This specifically includes uranium miners who assisted in the establishment and maintenance of the United Sates' nuclear weapons program. 42 U.S.C. § 7385s-5. As Section 7385s-5 explains, this coverage is meant to compensate these collateral victims of the United States nuclear weapons program "on the same basis as . . . a Department of Energy contactor employee[.]" *Id.*

Based on the foregoing analysis, Ms. Lucero is an intended beneficiary under the unambiguous meaning of 42 U.S.C. Section 7385s-1 and is therefore entitled to the same $42,500 as Mr. Lucero would have been before his untimely death.

### B. *Chevron* Step 2: The Department of Labor's Interpretation of the EEOICPA

Although the plain meaning of the EEOICPA compels the result reached above. The Court writes briefly to address the reasonableness of the Department of Labor regulations promulgated pursuant to 42 U.S.C. Section 7385s-1. In interpreting that section, the Department of Labor has formally stated that:

> (a) If a covered Part E employee dies after filing a claim but before monetary benefits are paid under Part E of the Act, and his or her death is from a cause other than a covered illness, his or her survivor can choose to receive either the survivor benefits payable on account of the death of that covered Part E employee, or the monetary benefits that would otherwise have been payable to the covered Part E employee.

> (b) For the purposes of this section only, a death "from a cause other than a covered illness" refers only to a death that was solely caused by a noncovered illness or illnesses. Therefore, the choice referred to in paragraph (a) of this section will not be available if a covered illness contributed to the death of the covered Part E employee in any manner. In those instances, survivor benefits will still be payable to the claimant, but he or she cannot choose to receive the monetary benefits that would have otherwise been payable to the deceased covered Part E employee in lieu of survivor benefits.

20 C.F.R. § 30.509(a)–(b).  This regulation is a reasonable interpretation of 42 U.S.C. Section 7385s-1 and nothing in this official regulation is in conflict with the plain meaning of the statute or precludes the Court's result in this case.

In asserting that the Department of Labor has reached an interpretation of the EEOICPA contrary to the one reached by this Court, the Department of Labor's briefing relies heavily on the preamble to the final interim rule that was ultimately finalized at 20 C.F.R. § 30.509(a)–(b), the above quoted passage.  *See* Doc. 25, Opp. to Petition, at 15–18.  In the preamble to the final interim rule relied on by the Department of Labor, the Department of Labor described 20 C.F.R. § 30.509 as follows:

> Newly added § 30.509 describes the option that certain claimants under Part E have to choose between receiving the benefits payable to them as a survivor, and the benefits that would have been payable to the deceased covered Part E employee if he or she were still living at the time of payment. This option is contained in 42 U.S.C. 7385s-1(2)(B), and new § 30.509 notes that claimants will only have the opportunity to make this choice in certain limited circumstances. First, a survivor of a covered Part E employee may choose to exercise this option only if the employee died after filing his or her Part E claim (or a claim under former Part D), but prior to receiving any compensation under the Act. In addition, the covered Part E employee's death must have been solely caused by a non-covered illness or illnesses for this option to be available to the survivor. If both of these requirements are met, it is likely that a survivor would choose to receive the benefits that the deceased covered Part E employee would have received since, in that situation, no survivor benefits would be payable for the death.

70 Fed. Reg. 33590, at 33595 (June 8, 2005) (emphasis added).  In short, the preamble to the final interim regulation, but not the regulation itself, adopted the "any compensation" interpretation described by the Department of Labor above.  This language is clearly precluded by the plain language of Section 7835s-1.  *See* Section II(A), *supra*.

This interpretation from the preamble of the interim final rule is unreasonable because the plain language of the statute itself explains that the compensation referred to in Section 7835s-1

is not "any compensation under the Act" but rather the compensation "that the employee would have received in accordance with section 7385s-2 if the employee's death had not occurred before compensation was paid under paragraph (1)."   *Compare* 42 U.S.C. § 7835s-1(2)(B) (emphasis added), *with* 70 Fed. Reg. 33590, at 33595 (June 8, 2005) (emphasis added).

While this reasoning, in itself, is sufficient to render the Department of Labor interpretation expressed in its preamble unreasonable, the interpretation in the preamble is even more unreasonable because it reads out of existence the other compensation mechanisms that exist in the statute.   As the Department of Labor acknowledges in its briefing, EEOICPA is a complex compensation statute that authorizes multiple means of compensation for multiple reasons.   *See* Doc. 25, Opp. to Petition, at 2–5 (describing various compensation mechanisms). While this Opinion has heretofore concerned itself with Part E of the compensation regime (the portion at dispute in this lawsuit), there exist other compensation mechanisms within EEOICPA that would be precluded by the preamble to the interim final rule.   For example, Part B of the EEOICPA may also afford relief to a claimant.   *See, e.g.*, 42 U.S.C. § 7385s-4(a) (explaining how an EEOICPA Part B compensation determination automatically triggers an EEOICPA Part E finding).   In fact, Mr. Lucero was previously compensated for a claim under EEOICPA Part B. AR at 383–85.   The Department of Labor's interpretation as expressed in the preamble to the interim final regulation would preclude claims by a survivor when the decedent "receiv[ed] any compensation under the Act."   70 Fed. Reg. 33590, at 33595 (June 8, 2005).   This interpretation is clearly untenable given that a determination under a Part B claim actually assists a claimant in pursuing a Part E claim.   42 U.S.C. § 7385s-4(a) ("A determination under part B that a Department of Energy contractor employee is entitled to compensation . . . shall be treated for the purposes of this part as a determination that the employee contracted that illness through

exposure at a Department of Energy facility.").  Because a Part B determination may assist in a Part E determination, the Department of Labor's position in the preamble to its interim final rule that a Part B claim can preclude a Part E claims is unreasonable and contrary to the statutory scheme established by Congress with the EEOICPA.  *See* SUTHERLAND at § 46:5.

**III.**   *Auer* **Analysis**

In the alternative, the Department of Labor asserts that Ms. Lucero is precluded from relief under the Department of Labor's internal manual for processing EEOICPA claims.  Doc. 25, Opp. to Petition, at 18–20.  The Department of Labor internal claims procedure manual states:

> b. <u>Death Due to Non-Covered Illness, Part E</u>. If a covered Part E employee dies after filing a claim but before any payment is received, and if the employee's death was caused solely by a non-covered illness, the survivor (any survivor including the spouse) has the election of benefits option. The survivor may elect to receive compensation that the employee would have received had he not died prior to payment. It is not necessary for the employee to have filed a claim specifically for wage-loss or impairment in order to have the election of benefit option available. As long as the employee filed a Part E claim, claims for impairment and wage-loss are assumed. However, <u>if the employee received any compensation for impairment or wage-loss, prior to his death, such payment voids the election of benefit option.</u>

UNITED STATES DEPARTMENT OF LABOR, FEDERAL (EEOICPA) PROCEDURE MANUAL, Chapter 2-1200.12b (August 2010) (emphasis added), *available at* http://www.dol.gov/owcp/energy/regs/compliance/PolicyandProcedures/proceduremanualhtml/u nifiedpm/Unifiedpm_part2/Chapter2-1200EstablishingSurvivorship.htm (last visited on July 27, 2016).  This claims manual was the document the Director of OWCP's Division of Energy Employees Occupational Illness Compensation, Rachel P. Leiton, relied on when she issued an order on July 11, 2013 vacating the FAB's April 5, 2013 final decision in favor of Ms. Lucero. AR at 128–30.

In asserting that this claims manual is binding on this Court, the Department of Labor argues that such internal manuals are not entitled to *Chevron* deference and are instead entitled to a higher standard of deference under *Auer v. Robbins*.  519 U.S. 452 (1997).  In *Auer*, citing *Seminole Rock*, the Supreme Court held that an agency interpretation of its own regulation is controlling unless "plainly erroneous or inconsistent with the regulation."  *Auer*, 519 U.S. at 461 (citation omitted).  In *Seminole Rock*, the Supreme Court was faced with the challenge of interpreting the meaning of certain price control regulations promulgated pursuant to the Emergency Price Control Act of 1942.  *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 411–12 (1945).  Justice Murphy explained that when interpreting administrative regulations:

> a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt. The intention of Congress or the principles of the Constitution in some situations may be relevant in the first instance in choosing between various constructions. But the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.

*Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).  The Supreme Court in *Auer* controversially, but successfully, revitalized this rule.  *See* Cass R. Sunstein and Adrian Vermeule, *The New Coke: On the Plural Aims of Administrative Law*, 2015 Sup. Ct. Rev. 41, 68–82 (2015) (summarizing the scope of *Auer*, *Auer*'s detractors, and the arguments in favor of *Auer* deference).  Thus, since *Auer* revived the *Seminole Rock* standard, under existing precedent this Court is obligated to afford special deference to agency interpretations of their own regulations.  *See, e.g.*, *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1188 n.1 (10th Cir. 2015).

While the scope of *Auer* deference raises difficult and interesting theoretical issues, the Court need not address them here.  Because the EEOICPA itself specifies that the "compensation" specified in Part E survivor claims is the compensation "that the employee

would have received in accordance with section 7385s-2 if the employee's death had not occurred before compensation was paid under paragraph (1)[,]" 42 U.S.C. § 7835s-1(2)(B), the word "compensation" is not ambiguous in the way the Department of Labor suggests.  Since any regulation promulgated with an interpretation contrary to the plain meaning of the statute would be ultra vires and precluded under *Chevron*, this Court need not reach the question of whether Chapter 2-1200.12b of the United States Department of Labor Federal (EEOICPA) Procedure Manual properly interprets 20 C.F.R. Section 30.509(a)–(b).

### CONCLUSION

The EEOICPA provides that some of the collateral domestic victims of the United States nuclear weapons program, including uranium miners, are entitled to compensation.  If a victim dies after submitting a compensation claim but before such a claim is processed, the decedent's survivor is unambiguously entitled to the compensation "that the employee would have received in accordance with section 7385s-2 if the employee's death had not occurred before compensation was paid under paragraph (1)." 42 U.S.C. § 7835s-1(2)(B).   Any contrary interpretation of the statute by the Department of Labor is arbitrary and capricious, ultra vires, and void.  Because Ms. Lucero's claim falls squarely within the text of the EEOICPA, the final decision by the Department of Labor must be reversed.

**IT IS THEREFORE ORDERED** that Ms. Lucero's Petition for Review of Final Decision [Doc. 1] and Brief in Support Thereof [Doc. 23] is **GRANTED**.   It is further **ORDERED** that the Department of Labor return to Ms. Lucero her late husband's owed but unpaid compensation in the amount of $42,500.   Finally, it is **ORDERED** that any rule or regulation which the Department of Labor has promulgated that interprets "compensation" under Section 7835s-1(2)(B) of the EEOICPA in a manner contrary to the plain meaning of that statute

is arbitrary and capricious and thereby **VOID**.  As stated above, the Court does not believe that 20 C.F.R. § 30.509(a)–(b) advances such an impermissible interpretation.

The Court declines to issue an Order regarding attorney fees at this time.  This Court will consider the issue of attorney fees upon the submission of a properly noticed and fully briefed fees motion.

DATED this 5th day of August, 2016.

_____
MARTHA VÁZQUEZ
United States District Judge